**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL (“UEFA”) FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No. 1:26-cv-25872-JEM |

**APPLICANT UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL’S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FROM FIFA (AMERICAS), INC. AND FWC2026 US, INC. FOR USE IN A FOREIGN PROCEEDING**

FIFA U.S.'s opposition does not apply § 1782 as Congress wrote it. Rather, it asks the Court to rewrite the statute into a mechanism available only after a foreign criminal proceeding is already pending, a foreign prosecutor has already chosen to investigate, and UEFA has already established to a U.S. court that it will prevail on its foreign-law claims. That is ***not*** what § 1782 provides. Congress removed the statute's former pendency requirement more than sixty years ago and made clear that § 1782 reaches "criminal investigations conducted before formal accusation." The contemplated proceeding need not be "pending" or "imminent"; it need only be within reasonable contemplation. The Eleventh Circuit—and this Court—have applied that rule to contemplated foreign criminal proceedings, requiring reliable, non-speculative indications that proceedings—like UEFA's contemplated Swiss criminal proceeding on which it is actively working—are likely to be instituted within a reasonable time—not, as FIFA U.S. would have it, a complaint already filed, an investigation already opened, or charges already brought.

Unable to explain why UEFA's Application fails under either § 1782's statutory requirements or the discretionary *Intel* factors, FIFA U.S. spends the first 11 pages of its 20-page Opposition attempting instead to defend the FFE proposal that FIFA's own officers—including its Secretary General—have decried as "a sad and reproachable series of events." Those are FIFA's words—not UEFA's—and they are certainly not "false or misleading," as FIFA U.S. would have this Court believe. Only after trying to blame UEFA for FIFA's own goal does FIFA U.S. turn to § 1782. And because it cannot reconcile its position with the plain language of the statute or governing precedent, it substitutes a different test: that UEFA must first file a Swiss criminal complaint before seeking discovery to develop the evidence to support it; that UEFA must obtain a decision from Swiss authorities to investigate before it can gather evidence for that investigation; that UEFA must prove now that Swiss prosecutors will select particular targets and charges and agree with UEFA's view of Swiss law; and that UEFA must first await or procure an MLAT request it cannot make, direct, or control. Each of these propositions ignores the statute.

Section 1782 exists because evidence may be needed before a foreign proceeding is formally underway, and because an interested person may need judicial assistance to develop evidence for presentation to foreign authorities. UEFA has invoked exactly that procedure, seeking evidence from U.S. entities in this District for use in a concrete, reasonably contemplated Swiss criminal proceeding. FIFA U.S.'s Opposition offers no basis to impose a pendency requirement Congress removed, an exhaustion requirement it never enacted, or a foreign-law merits trial that

§ 1782 does not contemplate. The Application should be granted and the Subpoenas authorized.

**ARGUMENT**

## I. UEFA SATISFIES SECTION 1782'S STATUTORY FACTORS

### A. UEFA's "Contemplated" Swiss Criminal Proceeding Satisfies Section 1782

FIFA U.S. first argues that UEFA cannot seek discovery under § 1782 because it has not yet filed a Swiss criminal complaint. *See* Opp. 11–14. The U.S. Supreme Court, the Eleventh Circuit, and numerous courts applying § 1782 have long since rejected that argument. Section 1782 requires only that the requested discovery be "for use in a proceeding in a foreign or international tribunal, including ***criminal investigations conducted before formal accusation***." 28 U.S.C. § 1782(a) (emphasis added). The contemplated proceeding "need not be 'pending' or 'imminent'"; it need only be "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247–259 (2004) (citations omitted). The Eleventh Circuit follows that standard: a contemplated foreign proceeding qualifies where the applicant supplies "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc. ("CONECEL")*, 747 F.3d 1262, 1270 (11th Cir. 2014) (quotation omitted). In other words, UEFA need not have already filed its criminal complaint, need not show an investigation has already been opened by Swiss authorities, and need not prove the ultimate merits of a criminal mismanagement claim. *See id.* at 1270–71; *see also, e.g.*, *Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1034–35 (11th Cir. 2017); *Matter of Colombo Agroindústria S.A.*, 2022 WL 2167719, at *1–2 (S.D. Fla. June 16, 2022); *Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1303 (S.D. Fla. 2012); *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, 2011 WL 181311, at *9–10 (S.D. Fla. Jan. 19, 2011).

FIFA U.S. has not cited any authority to the contrary. At most, FIFA U.S. relies extensively on *Rendon*, 2020 WL 8771274 (S.D. Fla. Nov. 5, 2020), at *10, for the proposition that UEFA's Application lacks "objective indicium that the [Swiss] action is being contemplated" because "no criminal proceedings or investigations exist in Switzerland, and UEFA lacks the authority to initiate any." Opp. 12. That argument contravenes the express language of § 1782, which encompasses "criminal investigations conducted before formal accusation." Nor does it matter that UEFA cannot itself compel the opening of a Swiss criminal proceeding. Section 1782 has never required an applicant to control the foreign decision-maker. In *Intel*, the applicant could only lodge

a complaint; whether to pursue it rested with the Directorate General-Competition, and the Commission of the European Communities could ultimately dismiss it. 542 U.S. at 254–55, 259.

The Eleventh Circuit in *Furstenberg* applied the same principle to a contemplated criminal complaint, determining that the yet-to-be-filed complaint was sufficient under § 1782 where the applicants could file a complaint and submit information to a Luxembourg investigating judge, who would then decide whether to file charges. 877 F.3d at 1034–35. UEFA's Application fits squarely within *Intel* and its progeny. UEFA is preparing a criminal complaint alleging Infantino and, potentially, the FIFA officers who developed FFE, violated Article 158 of the Swiss Criminal Code. It is planning to submit that complaint to the competent Swiss authorities. Ex. 1 ("Supp. Kurz Decl.") ¶¶ 6, 12. UEFA requires the discovery sought here to finalize and support that complaint, not "to see if there is any merit" to a complaint UEFA could otherwise file today. *Rendon*, 2020 WL 8771274, at *12; *see* App. 40–41, 48–49; *see also* Supp. Kurz Decl. ¶¶ 7, 12. Whether UEFA may become a participant in a Swiss criminal investigation does not diminish its present need for this discovery; nor does a Swiss prosecutor's ability to later seek evidence via MLAT substitute for UEFA's right as an interested person to obtain discovery under § 1782 now. *See* Supp. Kurz Decl. ¶¶ 27–31.

### B. <u>The Discovery Requested from FIFA U.S. Is "For Use" in the Swiss Action</u>

Next, FIFA U.S. argues the discovery UEFA seeks is not "for use" in its contemplated Swiss action because the discovery it seeks must "first be used to persuade a third party to initiate that proceeding." Opp. 14 (quoting *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 678 (2nd Cir. 2022)). That is factually inaccurate and FIFA U.S.'s reliance on *IJK Palm* is misplaced. There, the applicant sought discovery to provide to private Cayman liquidators in the hope of persuading them to commence a *separate* civil action. *Id.* at 678. Indeed, the Court emphasized that the liquidators—the "third parties"—had expressed no plan to sue, and that the requested discovery would first have to persuade those *private actors* to exercise their discretion to initiate a future lawsuit. *Id.* at 677. That is not this case. UEFA does not seek discovery to persuade a private intermediary to commence litigation on its behalf. UEFA intends to submit the evidence directly to the Swiss criminal authorities, who are then *required to* investigate and institute criminal proceedings where they are aware of or have grounds for suspecting that an offense has been committed. Supp. Kurz Decl. ¶¶ 8–9.

FIFA U.S. also argues the requested discovery is not "relevant" to a criminal proceeding

against Infantino. Opp. 14–15. But this ignores FIFA U.S.'s own public filings and confuses corporate separateness with relevance and control for discovery purposes. There is nothing "tenuous" (Opp. 15) about FIFA U.S.'s connection to the contemplated proceeding. FWC2026 US, Inc.'s 2024 Form 990 discloses that Infantino was paid $1,724,393 as President of FWC2026 and lists other senior FIFA personnel among FWC2026's leadership. *See* App. 24; Ex. 2 (FWC2026 US, Inc.'s 2024 Form 990). FIFA U.S.'s separate argument (Opp. 15) concerning documents held by FIFA fares no better because it conflates alter-ego status with Rule 34 "control." UEFA need not establish that FIFA U.S. and FIFA are alter egos before FIFA U.S. must produce responsive documents in its possession, custody, or control. *See Batista v. Nissan N. Am., Inc.*, 2015 WL 10550409, at *1–2 (S.D. Fla. Dec. 8, 2015) (rejecting corporate separateness defenses and holding "control" requires only the "right, authority, or practical ability to obtain the materials sought on demand." (quotation omitted)).

### C. <u>FIFA U.S.'s Arbitration Argument Misconstrues UEFA's Application</u>

FIFA U.S. wrongly argues that because UEFA's dispute is "subject to arbitration" under FIFA's Statutes, § 1782 discovery is barred under *ZF Automotive*. Opp. 15–16. *ZF Automotive* addressed only whether a private arbitral panel qualifies as a tribunal under the statute; it says nothing about discovery sought for a criminal referral to foreign prosecutorial authorities. *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 631–33 (2022). As the Application makes clear, UEFA seeks discovery for use in a contemplated Swiss *criminal* proceeding before Swiss prosecutors and, as appropriate, Swiss courts—bodies "imbued with governmental authority" not private adjudicators. *Id.* at 631; *see also* 28 U.S.C. § 1782(a). FIFA U.S. does not and cannot identify a single agreement allowing Infantino or any other FIFA official to have criminal complaints against them submitted to CAS arbitration. The three cases FIFA U.S. cites (Opp. 16) do not change that analysis, since each involved discovery sought for use in a civil dispute expressly covered by an arbitration clause, which is not the case here.

### D. <u>UEFA Qualifies as an "Interested Person" Under Section 1782</u>

The Supreme Court held in *Intel* that an "interested person" under § 1782 includes any person with "reasonable interest in obtaining judicial assistance." 542 U.S. at 256–57 (cleaned up); *see also Application of Bracha Found.*, 663 F. App'x 755, 762–63 (11th Cir. 2016) ("[T]he *Intel* Court expressly rejected the narrow construction of 'interested person' advanced by [respondent]—that the term is exclusively limited to litigants[.]") FIFA U.S. cannot credibly claim

that UEFA—an association of 55 of FIFA's 211 members endowed with express governing authority under FIFA's Statutes—lacks a reasonable interest in this Court's assistance. FIFA's Statutes give UEFA 9 of the 37 seats on the FIFA Council—the body "vested with exclusive authority to decide how FIFA's commercial rights are to be promoted." Kurz Decl. ¶ 11. Infantino's exclusion of the Council from the FFE proposal lies at the heart of the alleged criminal mismanagement giving rise to UEFA's contemplated Swiss criminal complaint. UEFA's interest is thus not a mere contingent "financial interest in the outcome," and *IJK Palm* does not support FIFA U.S.'s argument (Opp. 17). 33 F.4th at 678.

Moreover, UEFA, as the recognized body through which its 55 members act collectively in FIFA's governance, is entitled to represent its members' interests in obtaining this Court's judicial assistance under § 1782. *See Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) ("It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing."); *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (recognizing a "recognized relationship, such as that of an agent and principal," conferred "interested person" status). UEFA's members, who have endorsed this proceeding and condemned Infantino's conduct, each have independent rights as complainants under Swiss law.[1] Supp. Kurz Decl. ¶ 6. By acting through UEFA, its members have spared FIFA U.S. and this Court the prospect of up to 55 separate § 1782 applications. FIFA U.S.'s implication that the "interested person" requirement bars such collective action is entirely inconsistent with the purposes of § 1782 and judicial economy.

FIFA U.S.'s own expert never disputes any of this, nor does he address whether these interests satisfy *Intel*'s "reasonable interest" test. Instead, he opines only on whether UEFA is an "aggrieved party" under Swiss law, a status UEFA does not presently claim. Macaluso Decl. ¶¶ 11–13. Rather, UEFA is an anticipated complainant under SCCP Article 301, "a recognized and procedurally meaningful position under Swiss law" and "the intended and only procedure for a party like UEFA" to set a criminal investigation in motion. Supp. Kurz Decl. ¶ 12; *see Certain*

[1] Just this week, Infantino lost support from his home country's own football federation, with the Executive Committee of the Swiss Football Association explaining that its decision followed "a comprehensive reassessment of developments over the past few months" that "raise[d] fundamental questions regarding leadership, governance, transparency and decision-making processes within FIFA." Supp. Kurz Decl., Ex. A.

*Funds*, 798 F.3d at 120 (recognizing "an established *right* to provide evidence and have the party consider it" conferred "interested person" status).

### E. This Court Need Not Decide FIFA U.S.'s Meritless Swiss-Law Defenses

Much of FIFA U.S.'s Opposition is devoted to arguing the merits of Infantino's Swiss-law defenses to a claim of criminal mismanagement. *See* Opp. 9–11. But there is no basis under § 1782 for a discovery court to inquire into whether the applicant will ultimately prevail under foreign law. The relevant question is whether the requested evidence is for use in a qualifying foreign proceeding, not whether the respondent's foreign-law merits defenses would prevail if and when that proceeding is brought. This Court has applied that principle directly. In *In re Furstenberg Finance SAS,* the respondents argued that the applicants lacked a legally cognizable basis for relief in the contemplated Luxembourg proceeding. The Court declined to decide the issue, explaining that whether the requested evidence would establish entitlement to relief under Luxembourg law "reaches further into the underlying merits of their claims than this court is required to contemplate under Section 1782, and the merits of their claims are not to be heard and decided before this Court." 2016 WL 10707012, at *3 (S.D. Fla. July 27, 2016), *aff'd*, 877 F.3d 1031; *see also In re England/Bahamas*, 2021 WL 3270074, at *3–5 (S.D. Fla. July 30, 2021) (declining to consider merit of contemplated claim, "which is best left to the foreign court," where application was "facially legitimate and sufficiently detailed").

The Eleventh Circuit follows the same approach. In *CONECEL*, the Court made clear that a § 1782 appeal was not the place to decide whether the respondents had actually overbilled the applicant or whether the contemplated Ecuadorian claims would succeed—those merits questions were matters "likely [to] be resolved . . . in Ecuador," and the Eleventh Circuit was "in no position to assess the merits" of the prospective foreign proceedings. 747 F.3d at 1268, 1274. The same rule forecloses FIFA U.S.'s effort to litigate Article 158's elements and UEFA's procedural role under Swiss law here. FIFA U.S.'s argument thus gets the sequence backward. UEFA seeks evidence to present a contemplated Swiss criminal complaint; FIFA U.S. responds that UEFA must first prove—in a U.S. discovery proceeding—the foreign-law merits of the very matter for which the evidence is sought. Section 1782 imposes no such circular requirement. This Court need not determine the ultimate targets or charges a Swiss prosecutor may pursue, decide the scope of UEFA's rights in a Swiss criminal process, or adjudicate whether the evidence will establish every element of a Swiss offense. Those questions are for Swiss prosecutorial and judicial authorities,

not this Court, and FIFA U.S.'s contentions are, in any event, wrong.[2] *See* Supp. Kurz Decl. ¶¶ 5–12 (describing UEFA's rights to initiate criminal proceedings and participation rights); ¶¶ 13–16 (describing role of private complainants under Swiss law); ¶¶ 17–20 (clarifying Article 158's financial loss element); ¶¶ 21–26 (clarifying Article 158's managerial position element).

## II. THE DISCRETIONARY *INTEL* FACTORS FAVOR UEFA'S APPLICATION

### A. UEFA Seeks Discovery from a Non-Participant in the Expected Swiss Action

Under the first *Intel* factor, the fact that discovery is sought "from a nonparticipant in the matter arising abroad" weighs ***in favor*** of granting an application. 542 U.S. at 264. UEFA and FIFA U.S. agree that FIFA U.S. is not a contemplated party to the Swiss criminal proceeding, will not appear before the Swiss prosecuting authority, and is a U.S. entity whose documents and custodians are located in this District. *See* App. 46, 50; Opp. 17. FIFA U.S. cannot recast this factor as weighing against UEFA's Application because some of the requested discovery theoretically could be "within the foreign tribunal's jurisdictional reach," including through Swiss prosecutors' use of the U.S.–Switzerland MLAT or § 1782. *Id.* (quoting *In re Kurbatova*, 2019 WL 2180704, at *3 (S.D. Fla. May 20, 2019)). This Court has previously rejected this very argument. *See In re Bio Energias Comercializadora de Energia Ltda.*, 2020 WL 509987, at *3 (S.D. Fla. Jan. 31, 2020) (rejecting argument and holding factor favored discovery from nonparticipants).[3] Nor is there any

---

[2] FIFA U.S. accuses UEFA of confusing equity and enterprise value, claiming that at least $14.2 billion in development funding, member payments, and non-commercial costs should be considered part of FFE's enterprise valuation. *See* Opp. 8–9. But the very Member Materials FIFA U.S. cites make clear that it is FIFA U.S. who confuses the issue. Enterprise value is the value of a business to all providers of its capital; equity value is enterprise value less debt. The two figures are thus identical for a debt-free business. FIFA's own materials confirm FFE is exactly that and FIFA U.S. points to nothing that would separate FFE's $20 billion "equity valuation" determined by J.P. Morgan from its enterprise value. ECF No. 1-2 at 14, 28. FIFA's own structure chart places member-association development funding and FIFA's non-commercial costs outside the FFE perimeter. Ex. 3 (FIFA, *FIFA Forward Enterprise — Member Materials* (July 29, 2026)) at 13. FIFA's FAQs likewise confirm that the $10 billion "total development funding figure" consists of "existing development programmes," including FIFA Forward, and "operating expenses of FIFA relating to its development activities." ECF No. 1-2 at 31–32. As for the $4.2 billion in member-association payments, that amount represents the purchase price investors would have paid for a minority stake in FFE at the $20 billion valuation, not an amount owed by FFE as debt weighing against its equity. *Id.* at 4.

[3] FIFA U.S.'s argument in *Klein* or *Jagodzinski* (cited at Opp. 17) lacks support as neither case involved foreign prosecutors, an MLAT, or a criminal proceeding. They instead involved a private dispute in which the applicant sought discovery from adversaries participating in foreign litigation; and neither denial rested on the first *Intel* factor alone. *Jagodzinski*, 2019 WL 1112389, at *5–6;

merit to the suggestion (Opp. 17) that UEFA's rights under § 1782 should yield to Swiss authorities or treaty channels. Section 1782(a) authorizes discovery pursuant to a request "by a foreign or international tribunal ***or*** upon the application of any interested person." (emphasis added). *Intel* itself recognized that a private complainant before the European Commission was an "interested person" that could use § 1782 even though the Commission had its own investigative powers. 542 U.S. at 256–57. The Eleventh Circuit has likewise rejected the contention that U.S.–Switzerland MLAT is in tension with private parties' rights to seek assistance under § 1782 in connection with a Swiss criminal proceeding. *Weber v. Finker*, 554 F.3d 1379, 1383–84 (11th Cir. 2009).

**B. <u>UEFA Is Not Circumventing Swiss Procedures</u>**

The third *Intel* factor asks whether a § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 265. It does not, as FIFA U.S. suggests, impose an exhaustion requirement that obliges an applicant to pursue every available avenue abroad first or else "explain[] why it bypassed the [foreign] authorities." Opp. 18; *see In re Petrus Advisers Invs. Fund, L.P.*, 2023 WL 3871614, at *5–6 (S.D. Fla. Mar. 9, 2023) (R. & R.) ("*Petrus I*") (§ 1782 "does not impose a requirement that the applicant first pursue discovery in the foreign forum"), adopted, 2023 WL 3673372, at *4 (S.D. Fla. May 26, 2023); *Gyptec, S.A. v. Hakim-Daccach*, 2017 WL 6557425, at *7 (S.D. Fla. Sept. 27, 2017) ("[E]ven if the discovery is available [in the foreign forum], this does not mean that [the applicant] is not entitled to seek discovery using the procedures set forth in Section 1782."). Only weeks ago, this District reaffirmed that § 1782 imposes no "exhaustion requirement obligating [an] Applicant to pursue every conceivable avenue of discovery [abroad] before seeking evidence from nonparticipants in this District," because "[t]o hold otherwise would add a prerequisite that Congress did not place in the statute." *In re Petrus Advisers Invs. Fund, L.P.*, 2026 WL 2364276, at *9 (S.D. Fla. Aug. 14, 2026) ("*Petrus II*"). Even *Jagodzinski*—the only case FIFA U.S. cites on this factor—recognizes that courts "do not require an applicant to definitively establish that he or she has exhausted its discovery attempts abroad." 2019 WL 1112389, at *7. The relevant question is instead "whether there are [foreign] proof-gathering restrictions that are akin to privileges that would prohibit the acquisition or use of the items sought." *Petrus I*, 2023 WL 3871614, at *6 (quotation omitted). An argument that an applicant "could pursue certain evidence through

---

*Klein*, 2025 WL 5078047, at *11–12. Moreover, *Klein* reaffirms that courts in this District "err[] on the side of ordering discovery." 2025 WL 5078047, at *8.

[foreign] procedures is materially different from showing that [the] Applicant is attempting to circumvent [a foreign] prohibition or policy." *Petrus II*, 2026 WL 2364276, at *9. FIFA U.S. makes only the former argument (Opp. 18); it identifies no Swiss rule, privilege, or order that bars UEFA from gathering this evidence or Swiss authorities from considering it, and none exists.[4] *See* Supp. Kurz Decl. ¶¶ 15–16. Thus, this factor too supports UEFA.

### C. UEFA's Discovery Requests are Not Unduly Intrusive or Burdensome

A party resisting discovery is required to "show specifically how . . . each question is overly broad, burdensome or oppressive"; a bare "recitation of expense and burden[]" is not sufficient. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (quotation omitted). Those principles apply with full force under § 1782. To carry the fourth *Intel* factor, "a party cannot rely on conclusory assertions, but must support its argument with specific evidence" and "a particular and specific demonstration of fact." *In re MTS Bank*, 2018 WL 3145806, at *8 (S.D. Fla. June 27, 2018); *see also CONECEL*, 747 F.3d at 1272–73 (respondent failed "to provide any specific evidence to support its blanket claim"); *Mesa Power*, 878 F. Supp. 2d at 1306 (holding respondent failed to meet its burden by asserting "all-or-nothing discovery challenge" (cleaned up)). FIFA U.S.'s Opposition fails to meet that standard. It offers no specifics, makes no factual showing, and provides no evidence. That is a choice, not an oversight. FIFA U.S. has never contacted UEFA to discuss the scope of any request, to propose a narrower time period, custodian list, or search protocol, or to identify a single burden that might be resolved by agreement. It has instead opposed the Application wholesale while purporting to hold their request-specific objections in reserve, to be deployed only if the Court grants relief, all but guaranteeing a second round of motion practice before a single document is produced. The Eleventh Circuit has declined to reward respondents, such as FIFA U.S., who "d[o] not appear to have taken any steps to meet [the applicant] somewhere in the middle or to narrow the discovery request in any particular way" and who instead "take[] an all-or-nothing approach." *CONECEL*, 747 F.3d at 1272–73. And, even

[4] The applicant in *Jagodzinski* failed to satisfy the third *Intel* factor because he had already obtained discovery from the respondents in prior French litigation, so he could not seek § 1782 discovery on the eve of a new French suit against the same respondents, "without first attempting to have the French tribunal overseeing his foreign proceeding rule on" the requests. 2019 WL 1112389, at *2, *7. The Court did not want § 1782 used to "jump the gun" given the *availability* of a discovery mechanism in the very foreign proceeding at issue. *Id*. at *7 (quotation omitted). Here, by contrast, FIFA U.S. concedes (at 18) that UEFA has no such Swiss mechanism.

if FIFA U.S. identified a specific request warranting narrowing, the remedy would be refinement, not denial. *Id.* (advising district courts to "cut down [overly burdensome] request[s], but not to nothing" (quotation omitted)). Once § 1782 discovery is authorized, the Federal Rules supply "the relevant practices and procedures," *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007), and that process is the proper avenue for any request-specific objection.

**D. <u>UEFA's Application is Not Intended to Harass FIFA U.S.</u>**

The assertion (Opp. 19–20) that UEFA filed its Application for harassment purposes is baseless. FIFA U.S. identifies no conduct suggesting UEFA seeks discovery for anything other than the stated purpose. FIFA U.S. disputes UEFA's account of the underlying events and complains that UEFA did not conceal its Application from the public. Neither establishes bad faith. First, FIFA U.S. fails to identify a single purported "false" or "misleading" statement in UEFA's Application. In fact, many of the challenged assertions derive from statements by FIFA's own personnel, some of whom have been fired or pushed out from FIFA for standing up to Infantino. *See* App. 35–38. FIFA U.S.'s disagreement with those accounts does not transform UEFA's request for discovery into harassment. If FIFA U.S. wants to rebut UEFA's allegations, the quickest route is to produce the requested discovery, making good on FIFA's purported commitment to transparency. *See* ECF No. 1-1 at 1287–1290. Second, nothing required or permitted UEFA to file its Application under seal. Local Rule 5.4(a) makes clear that filing under seal is available only where a factual and legal basis exists. FIFA U.S.'s expectation that disputes about its conduct will be aired only behind closed doors may reflect the way FIFA prefers to handle its own business, but it is not the presumption in federal court. *See Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570–71 (11th Cir. 1985) ("[S]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access." (quotation omitted)). Finally, there is nothing untoward about UEFA discussing the governance of world football publicly. That FIFA's Presidential election is approaching (*see* Opp. 20) does not immunize Infantino or his misconduct from public scrutiny, much less establish that discovery sought for UEFA's foreign proceeding is pretextual. UEFA is entitled to pursue legitimate legal remedies and to communicate publicly about matters affecting its members and the governance of the world's most popular sport regardless of Infantino's electoral ambitions.

## <u>CONCLUSION</u>

For these reasons, the Court should grant UEFA's Application and authorize the Subpoenas.

Dated: October 5, 2026

/s/ *Aliette D. Rodz*
Aliette D. Rodz
Florida Bar No. 0173592
arodz@shutts.com
Elle Thomas
Florida Bar No. 1051229
ethomas@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel. (305) 347-7342
Fax (305) 381-9982

Andrew J. Levander
(admitted *pro hac vice*)
andrew.levander@dechert.com
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel. (212) 698-3500
Fax (212) 698-3599

Christina G. Sarchio
(admitted *pro hac vice*)
christina.sarchio@dechert.com
Scott E. Lerner
(admitted *pro hac vice*)
scott.lerner@dechert.com
Benedict S. Bernstein
(admitted *pro hac vice*)
benedict.bernstein@dechert.com
Aimee C. Hwang
(admitted *pro hac vice*)
aimee.hwang@dechert.com
DECHERT LLP
1900 K Street NW
Washington, D.C. 20006
Tel. (202) 261-3300
Fax (202) 261-3333

Ariel D. Smith
(admitted *pro hac vice*)
ariel.smith@dechert.com
DECHERT LLP
Cira Centre

2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 994-4000
Fax (215) 994-2222

*Counsel for Applicant Union des Associations Européennes de Football (UEFA)*